IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
ROCK HILL DIVISION

| | | |
|---|---|---|
| Valerie Colletti, on behalf of herself and all similarly situated persons, | ) ) ) | Civil Action No. 0:15-cv-04838-TLW |
| Plaintiff, | ) ) ) | **MONITRONICS' REPLY IN SUPPORT OF ITS MOTION TO COMPEL ARBITRATION OF INDIVIDUAL CLAIMS AND TO DISMISS ANY REMAINING CLAIMS** |
| vs. | ) ) ) | |
| Monitronics International, Inc., | ) ) | |
| Defendants. | ) ) | |

Plaintiff contends that the Arbitration Clause is unconscionable. Plaintiff's arguments, however, are without merit because (1) the Arbitration Clause is conspicuous and presented in a readable form; (2) Plaintiff presents no evidence to support her prohibitive-expense argument; (3) the designated arbitration-forum (*i.e.*, Dallas, Texas), is not mandatory, and the parties can agree on another location; (4) designation of applicable arbitration rules and an arbitrator does not offend the parties' agreement; and (5) the Clause does not limit Plaintiff's recovery under the Telephone Consumer Protection Act. On these bases, Defendant Monitronics International, Inc. ("Monitronics") hereby submits this Reply in opposition to Plaintiff's Response, (ECF No. 17), to Monitronics' Motion to Compel Arbitration of Individual Claims and to Dismiss Any Remaining Claims ("Motion to Compel"), (ECF No. 7).

**ARGUMENTS IN REPLY**

On June 13, 2012, Plaintiff executed an Alarm Monitoring Agreement ("Monitoring Agreement") at her home for the purchase of an alarm monitoring service. (Mot. to Compel at 2; Decl. Valerie Colletti ¶ 5-6, ECF No. 17-1.) Plaintiff does not dispute this fact. Plaintiff also does not dispute that the Monitoring Agreement contained an Arbitration Clause, (Decl. Valerie

Colletti ¶ 10), under which the parties agreed to arbitrate "all claims, disputes, or lawsuits . . . regardless of their nature, arising out of this agreement or any other business relationship between the parties," (Monitoring Agreement ¶ 13, ECF No. 7-1). Neither does Plaintiff contest that the Monitoring Agreement involved interstate commerce, thereby bringing this dispute within the purview of the FAA.

Rather, Plaintiff contends that the Arbitration Clause is unconscionable because it is part of an adhesion contract that provided her "no meaningful choice" and contained "oppressive and one-sided terms." (Pl.'s Reply at 3, 6.) However, Plaintiff's arguments, fail to overcome the "heavy presumption in favor of arbitrability." *Peoples Sec. Life Ins. Co. v. Monumental Life Ins. Co.*, 867 F.2d 809, 812, (4th Cir. 1989). The Arbitration Clause is valid and binding, and Monitronics' Motion should be granted.

**I.  Arbitration is required to the extent Plaintiff's challenges the Monitoring Agreement as a whole.**

Plaintiff cannot avoid arbitration simply by opposing the entire Monitoring Agreement. Pursuant to United States Supreme Court precedent, challenges to an entire agreement should be "considered by the arbitrator in the first instance." *Buckeye Check Cashing, Inc. v. Cardegna*, 546 U.S. 440, 445-46 (2006). Here, while arguing that the Arbitration Clause is unconscionable, Plaintiff tacitly challenges "additional unconscionable provisions found throughout the contract," such as the "limitation of damages" clause in paragraph 5, the "limitation on actions" clause in paragraph 12, and the "assignment" clause in paragraph 16. (*Id.* at 7, 9; *see also* Decl. Valerie Colletti ¶ 11-12.) In general, Plaintiff also contends that she lacked meaningful choice when executing the entire Agreement, (Pl.'s Reply at 3), pointing to the alleged "confusing and inconspicuous nature of Defendant's contract," (*id.* at 5).

Because Plaintiff's unconscionability challenge is indistinguishable from a challenge to the entire Monitoring Agreement, Plaintiff's claims should be compelled to arbitration.

## II. The Arbitration Clause is conspicuous and presented in a readable form.

Plaintiff's main argument is that the Monitoring Agreement is an adhesion contract. But, as Plaintiff acknowledges, "an adhesion contract is not 'per se unconscionable.'" (Pl.'s Reply at 3.) *Accord Munoz v. Green Tree Fin. Corp.*, 343 S.C. 531, 542, 542 S.E.2d 360, 365, n.5 (2001) (citing state and federal precedent). Similarly, any alleged disparity in bargaining power in such a contract, (Pl.'s Reply at 4), "will not invalidate an arbitration agreement" without more, *Munoz*, 343 S.C. at 541, 542 S.E.2d at 365 n.5.

However, any alleged unconscionability cannot be based on a failure to read. In this case, Plaintiff entered the Agreement voluntarily, and she does not contend that she lacked time to read the Monitoring Agreement or that she felt pressured while reviewing it. Indeed, Plaintiff signed the Agreement in the comfort of her home. (Decl. of Valerie Colletti ¶ 6.) She also does not present evidence that Monitronics is the only service provider or that she lacked the ability to reject the Agreement. (*See* Monitoring Agreement at 1 ("Right to Cancel").) *See Bar-Ayal v. Time Warner Cable Inc.*, No. 03 CV 9905, 2006 U.S. Dist. LEXIS 75972, at *59 (S.D.N.Y. Oct. 16, 2006) (rejecting an unconscionability argument, noting a lack of "any evidence that [plaintiff] could not obtain high-speed Internet services from another provider"). Rather, in hopes of sustaining her argument, Plaintiff essentially argues that she did not read the Monitoring Agreement or Arbitration Clause because of the number and length of the agreements, and the font and labeling of the provisions therein. Plaintiff's arguments are unpersuasive.

3

Plaintiff argues that the Monitoring Agreement "was presented to her as part of a group of documents," (Pl.'s Reply at 5), and that the second page of the Monitoring Agreement "was never pointed out to [her] or explained to [her] before or after entering the agreement," (Decl. of Valerie Colletti ¶ 10). However, Plaintiff was presented with two agreements, totaling only five pages. (Alarm System Work Order Agreement, ECF No. 17-2 (three pages); Monitoring Agreement (two pages).) She also contends that the Agreement was "drafted . . . in small font" and consisted of "20 paragraphs." (Pl.'s Reply at 5.) But the font size is not too small; when converted from pdf to word format, the Monitoring Agreement is at least 8.5-font size, with headings and captions appearing in a slightly larger size. A court within this jurisdiction upheld an agreement that appeared in "one-half the size of regular 12 point font print," rejecting the argument that the arbitration clause was "too small to be conspicuous, read or understood." *Mkt. Am., Inc. v. Tong*, No. 1:03CV00420, 2004 U.S. Dist. LEXIS 13664, at *18-19 (M.D.N.C. July 15, 2004). In addition, twenty paragraphs is not an overwhelming amount to read; contracts with more provisions have been upheld by courts. *E.g.*, *id.* at *19-20 (enforcing an arbitration agreement that "was one of only thirty-two printed [provisions] on the reverse side of" an agreement).

Plaintiff also argues that the Arbitration Clause was inconspicuous because it is "located on the back of [the] contract." (Pl.'s Reply at 5.) While the Arbitration Clause does appear on the reverse side of the Monitoring Agreement, this location is not problematic as there was adequate notice of the Clause. The following notice appeared prominently printed on the first page above her signature:

> **CUSTOMER RESPONSIBILITY TO READ AGREEMENT:**
> CUSTOMER ACKNOWLEDGES RECEIPT OF A COMPLETE
> COPY OF THIS AGREEMENT AND TWO COPIES OF THE
> NOTICE OF CANCELLATION FORM AND HAS READ AND

UNDERSTOOD ALL TERMS AND CONDITIONS INCLUDING THOSE CONTAINED ON THE REVERSE SIDE AND INCORPORATED BY REFERENCE HEREIN. THE TERMS AND CONDITIONS INCLUDE . . . AN ARBITRATION CLAUSE IN SECTION 13.

(Monitoring Agreement at 1 (emphasis in original).) Just as the notice provision advised, the Arbitration Clause appeared on the second page, spaced apart from the other clauses, and labeled as follows: "**13. BINDING ARBITRATION: THE PARTIES AGREE TO RESOLVE THROUGH BINDING ARBITRATION ALL CLAIMS, DISPUTES, OR LAWSUITS (COLLECTIVELY "CLAIMS"), REGARDLESS OF THEIR NATURE ARISING OUT OF THIS AGREEMENT OR ANY OTHER BUSINESS RELATIONSHIP BETWEEN THE PARTIES.**" (*Id.* ¶ 13 (emphasis in original).)

Courts have found similar language and labeling sufficient. *See Oumar Dieng v. Coll. Park Hyundai*, No. 2009-0068, 2009 U.S. Dist. LEXIS 58785, at *14-15 (D. Md. July 9, 2009) (finding an arbitration clause that appeared on the second page of a two-page document conspicuous because it was bolded, underlined, and capitalized). It is also of no consequence that certain sentences in the Arbitration Clause are not bolded or capitalized, (Pl.'s Reply at 6), because the heading was sufficient to provide Plaintiff with notice of the Clause. *See Clark v. Goldline Int'l, Inc.*, No. 6:10-cv-01884, 2010 U.S. Dist. LEXIS 126192, at *15 (D.S.C. Nov. 30, 2010) (rejecting a conspicuousness challenge of an arbitration agreement that contained "clauses that alternat[ed] between those in written in bold capital letters and small plain text"). The Arbitration Clause is not inconspicuous, and therefore, Plaintiff's challenge fails.

In any event, Plaintiff had a duty to read the Monitoring Agreement and Arbitration Clause, and Monitronics did not have a duty to explain them. *See Munoz*, 343 S.C. at 541, 542 S.E.2d at 365 (2001) ("[A] person who can read is bound to read an agreement before signing

it."); *id.* at 541, 542 S.E.2d at 365 n.5 ("[A]rbitration agreements governed by the FAA will not be set aside on the ground the arbitration clause was not noticed or explained since the party signing the agreement is presumed to have read it."); *see also Adkins v. Labor Ready, Inc.*, 185 F. Supp. 2d 628, 638 (S.D.W. Va. 2001), *aff'd*, 303 F.3d 496 (4th Cir. 2002) ("[T]here is no requirement that the more sophisticated party to a contract offer the less sophisticated party an oral explanation of the terms of the contract . . . .").

In addition, there was no requirement that Plaintiff have counsel present during execution of the Agreement. (*Contra* Pl.'s Reply at 4 (stating she did not have a lawyer "to assist her in her understanding of the implications").) If Plaintiff required assistance, it was her "duty to exercise care for [her] protection by asking someone who can read to read the instrument for [her], and if [she could] protect herself in that way, and d[id] not do it [s]he is bound by the instrument." *Shumpert v. Serv. Life & Health Ins. Co.*, 220 S.C. 401, 413, 68 S.E.2d 340, 345 (1951). Plaintiff did not, and therefore, she should be bound. Moreover, enforcement of the duties suggested by Plaintiff would run contrary to Supreme Court guidance as it would result in the imposition of extraordinary contract formation requirements to an arbitration agreement. *See AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 341 (2011) (preventing courts from invalidating arbitration agreements "by defenses that apply only to arbitration"). As such, the parties' agreement to arbitrate should not be disturbed for Plaintiff's failure to read.

**III.     Plaintiff's cost-apportionment argument is unsubstantiated, and therefore, fails.**

A party claiming prohibitive arbitration costs "bears the substantial burden of showing a likelihood of incurring" such costs. *Muriithi v. Shuttle Express, Inc.*, 712 F.3d 173, 181 (4th Cir. 2013). Under the framework provided under *Green Tree Financial Corp.-Alabama v. Randolph*, 531 U.S. 79 (2000), a party must present sufficient evidence of "(1) the cost of arbitration; (2)

[her] ability to pay; and (3) the difference in cost between arbitration of [her] dispute and litigation." *Muriithi*, 712 F.3d at 181 (citing *Randolph*, 531 U.S. at 90-92). Plaintiff fails to meet this standard.

Plaintiff's sole argument is that the travel costs from South Carolina to Texas would create an "undue and substantial financial burden," but she provided no evidence of this burden. (Pl.'s Reply at 6.) In *Muriithi*, for example, the Fourth Circuit found evidence insufficient when the plaintiff only noted that the arbitrator fees "could range between $800 and $2,200 per day." 712 F.3d at 182. Specifically, the court held that the plaintiff had not established "even the most basic element . . . , namely, the costs of arbitration." *Id.* Here, Plaintiff did not provide any such information on arbitration costs. Similarly, she did not detail her ability to pay. Like the plaintiff in *Muriithi*, Plaintiff did not provide "evidence or argument about the value of [her] claim," which the Fourth Circuit noted "is a critical factor in a 'prohibitive costs' analysis." *Id.*

In addition to travel expenses, Plaintiff contends that the appointment of an arbitrator will result in "greater actual expenses before the commencement of an arbitration proceeding." (Pl.'s Reply at 7.) This issue alone, however, is insufficient to support the cost apportionment argument. Just as in this case, an arbitrator had not been designated in *Randolph*, but the Supreme Court upheld the agreement, noting that the record contained "hardly an information on the matter" of arbitration costs. 531 U.S. at 90. A party seeking to invalidate an arbitration agreement based on arbitral costs "must establish the likely existence of such costs with firm proof." *Id.* Plaintiff has failed to meet this burden and her challenge should be rejected.

**IV.     Designation of the applicable rules is appropriate under the parties' agreement.**

Plaintiff's remaining arguments closely track a recent opinion from the United States District Court of Northern Georgia, *Hurst v. Monitronics International, Inc.*, No. 1:15-cv-1844,

2016 WL 523385, at *2 (N.D. Ga. Feb. 10, 2016). *Hurst* has subsequently been appealed to the Eleventh Circuit Court of Appeals, and is of no moment here in any event. Nonetheless, in reliance on *Hurst*, Plaintiff contends that the Clause is unconscionable because the "commercial rules of the Federal Arbitration Act (FAA)," do not exist. (*See* Pl.'s Reply at 5 n. 3.) The *Hurst* court did not cite authorities for holding that a scrivener's error such as this makes an arbitration agreement unconscionable.

In fact, direct authority to the contrary based on established Eleventh Circuit precedent exists and is more persuasive. In *Sankey v. Sears, Roebuck & Co.*, 100 F. Supp. 2d 1290, 1297 (M.D. Ala. 2000), the trial court found that the naming of non-existent rules in an arbitration clause was not fatal to the agreement. The clause provided that arbitration should be conducted "pursuant to the Uniform Arbitration Act of the American Arbitration Association"; however, the American Arbitration Act ("AAA") did not promulgate the Uniform Arbitration Act. *Id.* The court applied a rule articulated by the Eleventh Circuit Court of Appeals, which provided that "[o]nly if the choice of forum is an integral part of the agreement to arbitrate, rather than an 'ancillary logistical concern' will the failure of the chosen forum preclude arbitration." *Id.* (quoting *Brown v. ITT Consumer Fin. Corp.*, 211 F.3d 1217 (11th Cir. 2000)). Finding that the rules were not an integral part of the agreement, the *Sankey* court ordered the parties to "resolve the arbitrable disputes in the manner provided by the Uniform Arbitration Act." *Id.* at 1298.

Just like in *Sankey*, the mistaken reference to commercial rules of the FAA "is not fatal to the [A]rbitration [C]lause." *Id.* at 1297. Plaintiff has presented no evidence that the choice of rules was an integral part of the Agreement. Given national policy favoring arbitration, a clerical error is insufficient to invalidate the parties' agreement to arbitrate. Therefore, and in line in

*Sankey*, the applicable arbitration rules should be set according to what the court deems appropriate.[1]

## V. The forum-selection is not mandatory, and therefore, is not unconscionable as a matter of law.

Plaintiff challenges the provision providing for arbitration in Dallas, Texas on grounds that it (1) would prevent arbitration by "an unbiased, neutral third party," (Pl.'s Resp. at 6), and (2) would create a financial burden because of "hotel and airline" costs, (*id*. at 6). Again, Plaintiff's arguments track the *Hurst* holding, but fail nonetheless.

### A. Plaintiff's bias objection is not ripe for consideration.

First, "fairness objections should generally be made to the arbitrator," and "[o]nly after arbitration may a party . . . raise such challenges." *Tenaglia v. Ryan's Family Steak Houses, Inc.*, No. 4:02-2684-25, 2003 U.S. Dist. LEXIS 26322, at *18-19 (D.S.C. May 9, 2003). Even then, any alleged partiality "must be direct, definite, and capable of demonstration rather than remote, uncertain or speculative." *Id.* at *20. This case is distinguishable from the one cited by Plaintiff. (Pl.'s Reply at 5 (citing *Hooters of Am., Inc. v. Phillips*, 173 F.3d 933, 941 (4th Cir. 1999).) In *Hooters*, the court found bias where the restaurant promulgated its own system of procedural rules under which to conduct arbitrations. 173 F.3d at 941. However, "[a]bsent evidence of a system of rules promulgated by one party to the arbitration, the appropriate review

---

[1] Monitronics was only able to find one case in this District that was remotely similar to this case, but the issue there was whether a non-existent *forum* was enforceable. *See Nat'l Material Trading v. M/V Kaptan Cebi*, No. 2:95-3637-23, 1997 U.S. Dist. LEXIS 24027, at *18 (D.S.C. 1997). The court explained that in "[c]onstruing the validity of arbitration clauses, it must be determined whether the essential terms are sufficiently definite, so as to enable the court to give them an exact meaning." *Id.* The terms were not sufficiently definite because "there [were] numerous [forums] in Switzerland, presumably each of which ha[d] its own rules of evidence and procedure." *Id.* Here, however, there are only three major domestic arbitration bodies, giving the Court the ability to determine the appropriate rules for arbitration.

by [the] [c]ourt for evident partiality or bias would be post arbitration pursuant to Section 10 of the FAA." *Tenaglia*, 2003 U.S. Dist. LEXIS 26322, at *22-23.

Here, any alleged bias is wholly speculative as the arbitrator has not yet been named and Monitronics is not requesting arbitration under rules it developed. In any event, a Texas-arbitrator's knowledge of the security industry is not, by itself, indicative of bias. Indeed, the Supreme Court of the United States has explained that arbitration clauses can "specif[y], for example, that the decision maker be a specialist in the relevant field." *Concepcion*, 563 U.S. at 344-45; *see also Tenaglia*, 20003 U.S. Dist. LEXIS 26322, at *21 (rejecting plaintiffs' partiality challenge because there were "no direct ties between the arbitrators and either party to arbitration"). Should issues arise with appointing a neutral arbitrator, § 5 of the FAA allows for the court to "designate and appoint an arbitrator" upon application to the court. 9 U.S.C. § 5. Therefore, any bias challenge should be rejected.

### B. Arbitration is available by alternative and conscionable means.

Even with the Arbitration Clause providing for arbitration in Dallas, Texas, an arbitrator has the authority to fashion relief as to mitigate Plaintiff's travel, and thus, her expenses. Under Rule 32 of the AAA, for example, an arbitrator has the discretion to "allow for the presentation of evidence by alternative means including video conferencing, internet communication, telephonic conferences *and means other than in-person*." AAA, *Commercial Arbitration Rules and Mediation Procedures*, R-32(c) at 22, (2013) (emphasis added).

Furthermore, and as explained in Section III, Plaintiff fails to show that travel to Dallas is prohibitively expensive. But, to the extent the Arbitration Clause would be unenforceable for that reason, the plain language of the Clause provides a solution. It states: "Arbitration or any related litigation will take place in Dallas, Texas, *unless both parties agree to a different*

10

*location*." (Monitoring Agreement ¶ 13 (emphasis added).) Still Plaintiff argues that "Paragraph 13 of the agreement *requires* the arbitration take place in Dallas, Texas," and is therefore, unconscionable. (Pl.'s Reply at 6 (emphasis added) (citing *Hurst*, 2016 WL 523385, at *2).) However, Plaintiff's contention and reliance on *Hurst* is displaced by a "general maxim in interpreting forum-selection clauses," which provides that "an agreement *conferring* jurisdiction in one forum will not be interpreted as *excluding* jurisdiction elsewhere unless it contains specific language of exclusion." *IntraComm, Inc. v. Bajaj*, 492 F.3d 285, 290 (4th Cir. 2007) (emphasis in original). Under generally applicable principles, "[b]efore a court can assess whether a forum selection clause is 'unreasonable,' it must determine whether the clause is selective (*i.e.* mandatory) or permissive (*i.e.* nonmandatory)." *Albemarle Corp. v. AstraZeneca UK Ltd.*, No. 5:08-1085, 2009 U.S. Dist. LEXIS 28430, at *7 (D.S.C. Mar. 31, 2009). "If the clause is not mandatory, then the question of reasonableness is moot." *Id.* at *9. Pursuant to *Concepcion*, these generally applicable principles must equally apply to the Arbitration Clause.

The forum provision contained in the Arbitration Clause is permissive—allowing for arbitration in Dallas *or* in another place per the parties' agreement. Therefore, the challenge on this basis is moot. Even more, Monitronics is agreeable to conducting arbitration in the District of South Carolina. Presumably, because Plaintiff resides in this District and initiated this matter here, this forum would be more convenient for her. Courts in the District of South Carolina have upheld similar offers made in an effort to ease cost concerns.[2] *E.g.*, *Patricia Rowe P.A. v. AT&T,*

---

[2] At minimum, the alleged offending provisions fail to render the Arbitration Clause unenforceable because they can be severed. Per Fourth Circuit precedent, "the district court must . . . consider whether severance of the [unenforceable provision, rather than invalidation of the arbitration agreement[], would be the appropriate remedy." *Whitman v. Legal Helpers Debt Resolution*, No. 4:12-cv-00144, 2012 U.S. Dist. LEXIS 176480, at *10-11 (D.S.C. Dec. 13, 2012) (citation omitted) (severing two clauses based on fees). Unlike in *Simpson*, 373 S.C. at 34, 644 S.E.2d at 674, the alleged offending provisions in the Arbitration Clause are not

*Inc.*, No. 6:13-cv-01206, 2014 U.S. Dist. LEXIS 5102, at *36-37 (D.S.C. Jan. 15, 2014) ("A party's agreement to pay all arbitration costs, when made in a timely manner such as before a district court has ruled on the enforceability of an arbitration clause, moots the issue and forecloses the possibility that the opposing party could endure any prohibitive costs in the arbitration process." Here, Monitronics, in a timely manner, has agreed to arbitrate in Plaintiff's home jurisdiction, thereby mooting any challenge based on location and travel expenses.

VI. **The Arbitration Clause does not impermissibly limit Plaintiff's damages under the Telephone Consumer Protection Act.**

Plaintiff argues that Paragraphs 5 and 13 limit her recovery of damages. (Pl.'s Reply at 7.) As outlined in Section I, Plaintiff's challenge to Paragraph 5 is appropriate for the arbitrator and not the court because it is unrelated to the Arbitration Clause. *See, e.g.*, *Muriithi*, 712 F.3d at 180 (holding that a one-year limitations provision did not prevent arbitration because the unconscionable challenge "d[id] not rely on an aspect of the [a]rbitration [c]lause, but relate[d] only to the general contract defense in itself"). In any event, such provision can be severed from the Agreement. *See supra* note 2.

Furthermore, Plaintiff's damages challenge fails because Plaintiff misinterprets the applicability of *Simpson v. MSA of Myrtle Beach* to the facts of this case. (Pl.'s Reply at 8.) In *Simpson*, the South Carolina Supreme Court analyzed an arbitration clause that "specifically prohibit[ed] an arbitrator from awarding statutorily required treble or double damages." 373 S.C. at 17, 644 S.E.2d at 671. The *Simpson* arbitration clause provided that "[i]n no event shall the arbitrator be authorized to award punitive, exemplary, double, or treble damages . . . ." 373 S.C. at 20, 644 S.E.2d at 666. However, the Arbitration Clause at issue, does not contain any

---

"cumulative" as to render the entire Clause "wholly unconscionable." *Id.* at 35, 644 S.E.2d at 674 n.9 (recognizing that "in light of the state and federal policies favoring arbitration, many courts view severing the offending provision . . . to be the preferred remedy).

exclusion of treble damages, providing only that "[t]he arbitrator is not authorized to grant punitive damages." (Monitoring Agreement ¶ 13.)

In this respect, the subject Clause is similar to the agreement in *Carolina Care Plan, Inc. v. United Health Care Services., Inc.*, under which punitive damages were banned generally. 361 S.C. 544, 606 S.E.2d 752; *see also Simpson*, 373 S.C. at 29, 644 S.E.2d at 671 (2007) (distinguishing *Carolina Care* from cases where the arbitration clause specifically prohibits an arbitrator from awarding statutorily required treble damages). The *Carolina Care* court held that the damages at issue were not ripe because "an arbitrator may or may not choose to award treble damages in accordance with SCUTPA, depending upon whether an arbitrator finds the SCUTPA was violated and whether arbitrator finds that statutory treble damages are punitive or compensatory damages." 361 S.C. at 557, 606 S.E.2d at 759. Therefore, under the Arbitration Clause, the question of whether an arbitrator may award treble damages as a consequence of the TCPA is properly for the arbitrator and cannot support Plaintiff's unconscionability challenge.

## CONCLUSION

The Arbitration Clause is not unconscionable, and therefore, Plaintiff has failed to support her opposition to Monitronics' motion to compel. Accordingly, and for the reasons set forth above, Monitronics respectfully requests this Court to enter an order compelling arbitration, finding that class wide arbitration is not permitted, and dismissing or staying this action pending arbitration.

[*signature on following page*]

NELSON MULLINS RILEY & SCARBOROUGH LLP

By: /s/ Donna O. Tillis
    Donna O. Tillis
    Federal Bar No. 11983
    Email: donna.tillis@nelsonmullins.com
    B. Rush Smith III
    Federal Bar No. 5031
    E-mail: rush.smith@nelsonmullins.com
    Erik T. Norton
    Federal Bar No. 09683
    Email: erik.norton@nelsonmullins.com
    1320 Main Street / 17th Floor
    Post Office Box 11070 (29211-1070)
    Columbia, SC  29201
    (803) 799-2000

*Attorneys for Monitronics International, Inc.*

Columbia, South Carolina
April 22, 2016